(No. 51934.—

THE COUNTY OF LAKE, Appellant, v. THE FIRST NATIONAL BANK OF LAKE FOREST *et al.*, Appellees.

*Opinion filed March 21, 1980.*

Dennis P. Ryan, State's Attorney, of Waukegan (James

C. Bakk and Gary Neddenriep, Assistant State's Attorneys, of counsel), for appellant.

Erwin W. Jentsch, of Elgin, for appellees.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, the County of Lake, filed this action in the circuit court of Lake County seeking to enjoin defendants, the First National Bank of Lake Forest and Amalio N. Polidori, from violating the county's zoning ordinance. Defendants filed a counterclaim for a declaratory judgment that the ordinance was void insofar as it purported to prohibit the use of defendants' land for a restricted landing area and a museum. Following a hearing, the circuit court entered an order enjoining defendants from operating, *inter alia*, a private aircraft landing strip and an "air museum," and defendants appealed. The appellate court reversed the order except as to the portion which enjoined the operation of an interior-decorating business and a warehouse-antique business (68 Ill. App. 3d 693), and we allowed plaintiff's petition for leave to appeal.

The record shows that defendant Polidori, who is the beneficiary of a land trust for which the First National Bank of Lake Forest is trustee (hereinafter reference will be made only to defendant Polidori), acquired the 45-acre parcel here involved in 1952. In 1960 defendant applied to the Department of Aeronautics for permission to operate a "restricted landing area" on the property. Although the county and surrounding property owners were given notice and an opportunity to object, none did so. Notwithstanding its failure to object before the Department of Aeronautics, the county, in 1960, by letter, notified defendant that the site of his proposed landing strip was located in an "F" (farming) zone and that he would be required to secure a special use permit from the county board before proceeding. Defendant did not do so. In 1961 the Department of Aeronautics certified defend-

ant's landing strip as a restricted landing area, and it was so used until enjoined by the circuit court.

The Lake County zoning ordinance was revised in 1966. The record does not contain the ordinance in force prior to that time, but an exhibit indicates that the designation of the zoning classification applicable to defendant's property was changed from F (farming) to AG (agricultural). The ordinance as revised required a "conditional use permit" for the operation of an "airport" or "heliport" in an agricultural zone. The ordinance does not contain a definition of either term. Museums are not enumerated among the conditional uses for which standards are provided in the ordinance.

It is not clear from the record when defendant began operating his air museum. Defendant assembled a collection of World War II aircraft, parts and related items of interest and began soliciting "donations" from visitors. This enterprise was known as the "Victory Air Museum." Called under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), defendant testified that 2,500 to 3,000 persons visited the museum in 1976 and approximately 2,000 did so in 1977. In 1977 the museum generated a gross income of approximately $2,900. Robert Streicher, the director of building and zoning for Lake County, testified on cross-examination that defendant's was not the only museum operating in an agricultural zone. Lake County itself maintains a museum in an area zoned AG.

Other witnesses testified concerning the effects of the landing strip and the museum on surrounding uses, and as to the highest and best use of the property. Joseph Lenzen, whose property abuts the defendant's landing strip at the strip's north end, testified that planes frequently fly over his property in taking off and landing at defendant's airstrip. On one occasion a plane brushed a tree which grew near his house. Lenzen testified on direct examination that total takeoffs and landings ranged from "close to 300" in 1973 to approximately 25 in 1977.

However, on cross-examination he acknowledged that some of the flights over his house were attributable to Campbell Airport at Grayslake. A film taken by Lenzen depicting takeoffs and landings at defendant's landing strip and overflights of Lenzen's house was received in evidence.

There was testimony that use of the landing strip did not interfere with the use or enjoyment of a parcel of land located 155 feet from the defendant's land or a house located 300 feet away. Witnesses testified concerning the unsuitability of defendant's land for agricultural purposes and that only approximately 25% to 35% of the parcel was "farmable." Defendant adduced testimony that his use of the land was compatible with surrounding uses and that the landing strip met the safety requirements of the State of Illinois. There was testimony that the museum was of historical value and contained "rare" and "very rare" aircraft. There was conflicting testimony concerning whether the presence of persons attracted to the museum interfered with the use or enjoyment of surrounding parcels of land. A real estate appraiser called by plaintiff testified that defendant's property was best suited for "farmette" or "estate" uses and that the landing strip and museum had "a depreciatory effect on the values of property surrounding it."

We consider first the question whether the plaintiff's ordinance is applicable to a restricted landing area. The circuit court found "That the desired use of the property as a private landing strip requires a special permit from the County Board" and enjoined the use of "the property which is the subject matter of this lawsuit as a landing strip for aircraft." In reversing that portion of the order, the appellate court held that although the zoning ordinance required airports and heliports to possess conditional use permits, it failed to define either term. It concluded that the definitions of "airport" and "restricted landing area" contained in the Illinois Aeronautics Act (Ill. Rev. Stat. 1975, ch. 15½, pars. 22.6, 22.8) were mutually exclusive. After reviewing the definitions con-

tained in the municipal airport authorities act (Ill. Rev. Stat. 1975, ch. 15½, par. 68.1), the County Airports Act (Ill. Rev. Stat. 1975, ch. 15½, par. 110), and the St. Louis Metropolitan Area Airport Authority Act (Ill. Rev. Stat. 1975, ch. 15½, par. 302(f)), and the rule that zoning ordinances, being in derogation of the common law rights to the use of real property, must be strictly construed in favor of the right of a property owner to the unrestricted use of his property, the appellate court held "that the Lake County Zoning Ordinance is ambiguous and therefore is not applicable to a restricted landing area. Thus, a conditional use permit need not be obtained by this defendant. Accordingly the trial court's injunction entered on count I of the plaintiff's complaint was improper." 68 Ill. App. 3d 693, 698.

Plaintiff's ordinance provides for 20 zones and contains a table of the principal uses permitted in each of them. A footnote to the permitted-principal-uses table provides:

> "The above uses in Table 1 are permitted in the zones designated. However, the Zoning Officer shall have the right to allow any other use which is similar to and compatible with those uses permitted in the zone in question, and which is consistent with the purposes of this Ordinance."

The ordinance also provides:

> "B. Variations—It is the intent of this Ordinance to use the variation only to modify the application of this Ordinance to achieve a parity among properties similarly located and classified. Specifically it is to be used to overcome some exceptional physical condition which poses practical difficulty or unnecessary hardship in such a way as to prevent an owner from using his property as intended by the Zoning Ordinance.
>
> * * *
>
> 3. Standards for Variations—The Zoning Board may grant a variation whenever it shall have determined, and placed in its records, that all of the following conditions have been met:
>> a. That the variation does not permit a use other-

wise excluded from the particular zone in which requested."

In urging that the judgment of the appellate court was erroneously entered and must be reversed, plaintiff contends first that the zoning ordinance which expressly provides for conditional use permits for "airports and heliports" should be construed to include restricted landing areas. It argues that "this provision clearly indicates an intent on the part of the drafters that the permitted principal uses are to be broadly construed." It argues further that proper application of the rule that the ordinance is to be strictly construed in favor of the property owner required that this ordinance be broadly construed to permit restricted landing strips under the designation "airports and heliports." Thus construed, plaintiff argues, the ordinance required that defendant apply for a conditional use permit.

Alternatively, citing *City of Chicago v. Sachs* (1953), 1 Ill. 2d 342, plaintiff argues that where an ordinance lists the permitted uses to which property in an area may be devoted, those uses which are not listed are prohibited. Thus construed, use of defendant's property as a restricted landing area was prohibited and the judgment of the circuit court must be affirmed.

The rule that an ordinance is void if it is indefinite and uncertain and its precise meaning cannot be ascertained (*Consumers Co. v. City of Chicago* (1921), 298 Ill. 339) applies to zoning ordinances. From our examination of the ordinance here, we conclude that the appellate court correctly held that it is ambiguous and therefore does not apply to a restricted landing area.

Plaintiff contends that the appellate court erred in placing upon it the burden of proving that the aircraft museum was unlawful under a prior existing ordinance and that the question was neither raised by defendant nor argued in his brief on appeal. Defendant concedes that the issue decided by the appellate court was not raised in his brief, but argues that the judgment should be

affirmed for the reason that the judgment of the circuit court should have been reversed on grounds which were properly preserved for review.

The table of permitted principal uses contained in the ordinance shows that "museum or art gallery, public," is a principal use permitted in zones SR (suburban residential), UR–1, UR–2, UR–3 (urban residential), RR (resort residential), and CB (community business). The ordinance provides that in addition to the principal uses permitted in the designated zones, "the zoning officer shall have the right to allow any other use which is similar to and compatible with those permitted in the zone in question and which is consistent with the purposes of this ordinance." The portion of the ordinance which provides "standards for conditional uses" makes no provision for museums, and clearly the procedure provided for obtaining a variation is inapplicable. It would appear, therefore, that the only method of obtaining a permit for use of defendant's property as a museum would be to seek to rezone it into one of the classifications in which museums are permitted.

There is no contention that defendant's inability to use the property as a museum would have any substantial effect on its value or that his inability to do so would in any manner affect its sale or development. The area in the vicinity of the property is sparsely populated and generally open space, and apparently has existed in that status for a period of approximately 60 years. The only evidence which would indicate an adverse effect on the public health, safety or welfare was that on three or four occasions during the year visitors to the museum had parked their automobiles on the shoulders of the road and in some instances had used neighboring property to turn around. There was no evidence to indicate that these occasional occurrences in any way disrupted the flow of traffic or hindered motorists in the use of the roadway, and nothing in the record indicates in what manner the problems allegedly resulting would be less difficult if the

property were rezoned. A neighbor testified that the airplanes were "junk" and unsightly. Aesthetic considerations, although not disregarded, are not controlling (*La Salle National Bank v. City of Evanston* (1974), 52 Ill. 2d 415, 432) and are often a matter of personal taste. Further reason to question the validity of the ordinance is that the record shows that the plaintiff county itself maintains and operates a museum in an area zoned AG (agricultural).

On this record it is difficult to perceive in what manner the proscription of the use of the defendant's property as an air museum would bear any real or substantial relation to the public safety, morals, comfort or general welfare. Absent some such relationship the ordinance, insofar as it relates to this property, is void. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.) Because of the conclusions reached we need not consider the remaining contentions briefed and argued by the parties. For the reasons stated the judgment of the appellate court is affirmed.

*Judgment affirmed.*